## Case No. 4,987.

### FOUR CUTTING MACHINES.

[3 Ben. 220;[1] 9 Int. Rev. Rec. 145.]

District Court, S. D. New York. April 27, 1869.

A. J. Vanderpoel, for Payne.
B. K. Phelps, for Michener.

BLATCHFORD, District Judge. In this case, an order of reference was made to a commissioner, in August, 1868, to ascertain and report who is the informer in this case, entitled to share, as such, in the sum of $21,558.44, now in the registry of this court for distribution. The contest has proceeded before the commissioner between one Michener and one Payne, and a large mass of testimony has been taken before him on the part of those parties respectively, each of them claiming, as against the other, that he is entitled as informer. The United States do not seem, by the minutes of testimony taken by the commissioner, to have been represented before him on the reference, and the witnesses produced by each claimant were cross-examined only on the part of the other claimant, and not on the part of the United States. It was, therefore, very naturally and properly assumed by the commissioner, that the United States regarded the one or the other of the claimants, at all events, as entitled to share, as informer, in the funds, and that his duty was limited to the inquiry, as matter of fact, into the question as to who, within the language of the 179th section of the act of June 30, 1864 (13 Stat. 305), as amended by the 9th section of the act of July 13, 1866 (14 Stat. 145), first informed of the cause, matter or thing whereby the forfeiture in this case was incurred. That forfeiture is one incurred under the internal revenue acts of the United States. The commissioner has reported that Michener was the sole informer in this case. Payne has filed five exceptions to this report: (1) Because Michener is found to be the sole informer; (2) because Michener is found to be an informer; (3) because Payne is not found to be the informer; (4) because Payne is not found to be the sole informer; (5) because certain testimony offered by Payne before the commissioner was excluded by him. The questions arising on these exceptions have been argued before the court by the counsel for Michener and Payne respectively, the United States not being represented. The counsel for Payne, however, in fact argued on the part of the United States, by contending, that, independently of the question of Payne's rights as informer, Michener could not, in any event, share as informer, even though he should be found to be, as matter of fact, the person who, within the 179th section of the act of 1864, first informed of the cause, matter or thing whereby the forfeiture was incurred.

I have examined the evidence in this case with care, and am of opinion that Payne was not the person who, within the 179th section, first informed of the cause, matter or thing whereby the forfeiture in this case was incurred; and that Michener was the person, and the only person, who, as against Payne and all other persons, except the United States, first informed of such cause, matter or thing. I also think that the commissioner properly excluded the evidence named in the fifth exception. As respects Payne, therefore, and the exceptions taken by him, all of them are disallowed. But I think that Michener, although in fact the first informer, as against Payne and all other persons, is not entitled, as informer, to any share in the moneys to be distributed in this case. If I were inclined to a different opinion, I should, under the circumstances of this case, give an opportunity to the United States to be heard on the question, through their attorney, but that now becomes unnecessary.

It appears, that, during the whole period covered by the acts of Michener, on which he relies as constituting him informer, he was a revenue inspector at Philadelphia, appointed by the secretary of the treasury under the authority of the 5th section of the act of June 30, 1864; and that it was a part of his official duty to make the investigations and do the acts on which he relies. The property seized was forfeited and condemned for violations of the internal revenue laws, committed in New York by the firm of Alexander Ross & Co., in the manufacture and sale of tobacco. The researches and investigations made by Michener at Philadelphia, which place was his post of duty, were in reference to sales of articles made of tobacco by Ross & Co to customers of theirs at Philadelphia. Such duties were

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

discharged by Michener in co-operation with, and under the direction of, officers of the internal revenue at New York. The duties of an inspector, as defined by the 5th section of the act of June 30, 1864, are, the "proper enforcement of the internal revenue laws" and the "detection of frauds." The duties performed by Michener in this case were strictly duties of that character. The same section confers on an inspector the power of examining persons, books and premises, as may be necessary in the discharge of the duties of his office. In the present case, he examined and investigated in Philadelphia, to detect frauds committed by tobacco manufacturers in New York. But that was as much a part of his official duty as if the manufacturers had carried on their manufactory and committed the frauds in Philadelphia, and in the assessment district in and for which Michener was appointed. In discharging duties of this character, the whole time and services of Michener belonged to the United States, for the per diem compensation fixed by the said 5th section. All information acquired by Michener in the discharge of those duties, became, ipso facto, the property of the United States. Such information never became, as against the United States, the private property of Michener, so as to allow to him any discretion as to communicating it to or withholding it from his superior officers. That is the test. Information possessed by a private individual, holding no official relation to the United States, and bound by no official duty to disclose such information to his superiors, may be withheld or disclosed by him, as he elects. If he is the first to disclose it, he may become an informer under the law. But a person whose duty it is to disclose information, and who violates such duty if he does not disclose it, cannot be an informer. The information is, in judgment of law, disclosed to the United States, by being possessed by him as an officer of the United States charged with the duty of procuring the information, the moment he obtains the information. Undoubtedly, congress may, if they choose, award to an officer, under such circumstances, a share, as informer, in the proceeds of forfeitures; and if the language of the 179th section of the act of 1864 were such as to require or admit, in its proper construction, the including of Michener in its description of informers, I should so hold. But the language of that section is, that the informer's share is to be to the use of the person who shall first inform of the cause, matter or thing whereby the fine, penalty or forfeiture has been incurred. Who is to be first informed? The statute is silent. But it must necessarily mean, that the person to be first informed is a person whose duty it is, on behalf of the United States, to receive the information and impart it to his superior officers. That

was, in this case, the duty of Michener. But it was equally his duty to procure and impart the information; and he cannot be treated as an informer, for having ascertained the facts in question and imparted them to himself. Nor can he be treated as an informer because he imparted them to another or a superior officer; because, if, in this case, any other person besides Michener himself be regarded as the proper person to be first informed, so as to give to the communicator of the information the position of informer under the statute, we cannot stop short of the highest officer, the secretary of the treasury or the president, as the only proper recipient of the information, and the person who first informed such highest officer would be entitled as informer. Under the 91st section of the act of March 2, 1799 (1 Stat. 697), the informer is required to be a person who gives to a collector information in pursuance of which a fine, penalty or forfeiture is recovered, and may be any person other than the naval officer or surveyor of the district. Under that section, it was very properly held, by Judge Ware, in the district court for Maine, —Hooper v. Fifty-one Casks of Brandy [Case No. 6,674],—that an inspector of the customs could be an informer. But, under that act, the information was required to be given to the collector. If that language had not been used in that act, it would have been difficult for the court to say, as it did, that congress had offered to the inspectors an additional compensation beyond their regular stipend, and that they came within the words of the act. Under the 179th section of the act of 1864, the words "first inform," in order to warrant the treating of Michener as an informer, in this case, must be read as if they were written "first learn," or "first ascertain." But that is not the language. The import of the words "first inform" is, that the information is to be imparted by one person to another and a different person; that the latter person is to be one whose official duty it is to act on such information by imparting it to his superior officers, or otherwise; that he cannot obtain such information in the course of the discharge of his official duty, and impart it to himself, so as to make himself an informer under the law; and that the person who is to impart the information, so as to be informer, must be a person who has imposed upon him no official duty to impart the information. There is no principle which would put Michener in the position of informer, in this case, for what he did, which would not also require the court to regard Mr. Harvey, the inspector in New York, who received the information from Michener, as an informer in the case, because he was the first to inform Collector Bailey, who seized the property; and it would be difficult to say that Mr. Harvey and Michener would not, each of them, be entitled to the

same share as the other. These views are substantially those held by Judge Lowell, in the district court for Massachusetts, in the case of U. S. v. One Hundred Barrels Distilled Spirits [Case No. 15,946].

There must, therefore, be a distribution of the money in court in this case, without any reference to the claims of either Payne or Michener, as informer.